Steven J. German - State Bar No. 014789
Scott B. Seymann – State Bar No. 027215
**ADELMAN GERMAN, P.L.C.**
8245 North 85th Way
Scottsdale, Arizona 85258
Telephone (480) 607-9166
Facsimile (480) 607-9031
steve@adelmangerman.com

*Additional Attorneys for Plaintiff*
*Appear on Signature Line*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CYNTHIA ZADEL individually and on behalf of all others similarly situated,<br><br>        *Plaintiff,*<br><br>   v.<br><br>GLOBAL RECEIVABLES SOLUTIONS, INC., a Delaware corporation and ALORICA, INC., a California corporation,<br><br>        *Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**AND**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Cynthia Zadel ("Zadel') bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Global Receivables Solutions, Inc. ("Global Receivables Solutions") and Alorica, Inc. ("Alorica") (collectively the "Defendants") to seek redress for their making unsolicited telephone calls to the cell phone of consumers in violation of the Telephone Consumer Protection Act, 47 U.S.C 227 (the "TCPA). Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1.      Defendant Global Receivables Solutions is a leading large receivable management company, focused on debt collection.

2.      Upon information and belief, in January, 2015 Alorica, a worldwide leader in outsourcing solutions, acquired West Corporation's agent services businesses for $275 Million. In October, 2015, West Asset Management, Inc. changed its name to Global Receivables Solutions, Inc. The acquisition positioned Alorica to "add receivables management" to their business. The integration of West's agent services added an additional 1,500 near-shore employees (Jamaica and Mexico), 5,400 offshore employees (Philippines) and 18,400 domestic employees, bringing Alorica's employee headcount to 48,000 employees.[1] Tom Barker, chairman and CEO of West Corporation remarked that "Our company cultures and technologies are complimentary, and we will work closely together to ensure a smooth transition."[2] According to Barker, Alorica and West (now Global Receivables Management) intend on integrating West's proprietary work force management system, Spectrum, into their work force.

3.      Unfortunately for consumers, Defendants routinely call the telephone numbers of individuals with whom they have no relationship, such as the neighbors or relatives of its supposed debtors. It often acquires these numbers through unreliable

_____

[1] http://www.businesswire.com/news/home/20150107006482/en/Alorica-Announces-Strategic-Acquisition-West-Corporation%E2%80%99s-Agent

[2] *Id.*

methods like "skip tracing" or number trapping where the called party has not given <u>any</u> consent. Many of these numbers end up being cellphone numbers.

4.     Defendants lack prior express consent to call the cellphone numbers that they discover without the called party's prior knowledge or input. By auto-dialing such numbers, without consent, Defendants routinely violate the TCPA.

5.     Defendants' TCPA violations caused Plaintiff and the classes of consumers set forth herein actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited telephone calls, as well as the monies paid to receive such calls.

6.     Plaintiff seeks an injunction to stop Defendants from placing unlawful calls, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorney's fees.

**PARTIES**

7.     Plaintiff Cynthia Zadel is a natural person and resident of the State of Arizona. Plaintiff Zadel resides in Scottsdale, Arizona.

8.     Defendant Global Receivables Solutions, Inc. is a corporation organized and existing under the laws of the State of Delaware. Global Receivables Solutions, Inc. is registered to do business in the State of Arizona. The original name of this corporation was West Asset Management, Inc., but the corporation changed its name to Global Receivables Solutions, Inc. in September, 2015 following Alorica's acquisition of the company. Defendant Global Receivables Solutions conducts business throughout this District, the State of Arizona, and the United States.

9.     Defendant Alorica is a California corporation organized and existing under the laws of California. Alorica is headquartered at 5 Park Plaza, Suite 1100, Irvine, CA 92614.   Defendant Alorica conducts business throughout this District, the State of Arizona and the United States. Alorica purchased Global Receivables Solutions in January, 2015 to "combin[e] the strengths of both companies."[3]

## JURISDICTION AND VENUE

10.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., which is a federal statute. Furthermore, jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d) et seq. because the classes each consist of over 100 people, at least one member of each class is from a State other than Arizona, and the amount in controversy exceeds $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

11.     The Court has personal jurisdiction over Defendants because they conduct significant consumer business in this District and the unlawful conduct alleged in this Complaint occurred in or was directed to this District.

12.     Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b) because both Defendants solicit a significant amount of consumer business within this District, Defendant Global Receivables is registered to do business in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to,

---

[3] http://www.businesswire.com/news/home/20150107006482/en/Alorica-Announces-Strategic-Acquisition-West-Corporation%E2%80%99s-Agent

and/or emanated from this District.

## COMMON FACTUAL ALLEGATIONS

13.     Defendant Global Receivables Solutions, Inc. is a debt collector with over 3,200 employees and locations in six states plus an offshore location in Makati City, Philippines and Guadalajara, Mexico.

14.     Alorica, a customer management and outsourcing solution corporation purchased Global Receivables Solutions from West Corporation for $275 Million in January, 2015.

15.     Alorica, expressed their vision through their CEO Andy Lee that "This acquisition is the next step in our strategic vision to grow Alorica to become the number one BPO provider in our addressable markets."[4] Alorica is to use West's work-force management system, Spectrum, as a core-component of Alorica's service.

16.     Unfortunately for consumers, Defendants utilized (and continues to utilize) a sophisticated telephone dialing system to call cellular telephone users *en masse* for the purpose of collecting debt, often times calling consumers on their cellular phones who have not given Defendants their prior written express consent.

17.     Alorica revealed that it uses Avaya/Mosaix dialers as part of its dialer strategy in a recent job posting.[5]

18.     In many cases, Defendants contact consumers who owe money at a

---

[4] http://callcenterinfo.tmcnet.com/Analysis/articles/396110-alorica-acquires-west-corporations-agent-services-businesses.htm
[5] http://jobs.climber.com/jobs/Management-Business/-/Dialer-Administrator/50813709 and https://aloricajobs.taleo.net/careersection/nonstaff/jobdetail.ftl

phone number that the consumer has provided. However, in many other instances, Defendants call the cell phones of friends or relatives of the debtor in an effort to find the whereabouts of the debtor, without their consent, using equipment with the capacity to store or produce telephone numbers, and to dial them, *en masse* without any need for human intervention and without the consumer consent. Specifically, there are numerous complaints of Defendants using autodialed calls and pre-recorded calls to contact relatives of the deceased on their relatives' cell phones or the executor of the deceased's estate.

19.   Not surprisingly, these practices have led to significant complaints from consumers regarding West Asset Management, Inc., now Defendant Global Receivables Solutions, Inc.:

- I have received at least 7 calls from 877-486-5003, requesting to speak with someone who is charge of the estate of recently deceased individual.  The caller left her name as Karen Lee and gave me a reference number.  Needless to say all calls have been deleted.  The damn collection agencies won't even let you die in peace.[6]

- Called and left message for the person responsible for the debts of a deceased person that I haven't seen in most 20 years.[7]

- I have received two calls from this number, both times an educated sounding woman (no accent) left a clear message wanting to speak with whomever was responsible for paying debts for my deceased mother's estate. First, I am almost certain all debts were paid at that time, second my mother has been gone for more than six years and third, I think there are

---

[6] http://800notes.com/Phone.aspx/1-877-486-5003

[7] http://800notes.com/Phone.aspx/1-877-486-5003

restrictions around how long after a death one may collect. Still, I was concerned. Glad to see it wasn't just me.[8]

•    I was out of town for a week and a half and when I got home I had received 3 pre-recorded messages asking if I was the person in charge of the affairs of a …"

•    Got a call regarding my late sister-in-law. Neither my husband nor myself have ever had access to any of her bills or other financial info. So, there's no way we're responsible for her affairs. The most pathetic part of the call is they now she's passed and yet they're still gonna try to collect the debt.[9]

•    Similar to Andy but my caller had a heavy Eastern European accent and left the name Minerva with a reference number. They called trying to collect debts from my recently deceased father and had his name correct.[10]

20.    In addition, other consumers have reported publicly that they are hearing a pre-recorded message when they pick up calls from West Asset Management Inc., now Global Receivables Management, Inc.:

•    Calling me daily, usually twice in a row. I answered once and got an automated message asking me to hold for an operator. I added the number to my blocked list.[11]

•    If I pick up, an automated message says to hold for an important call.  I have held for several minutes and no one picks up.[12]

•    It has been recorded calls, that do not identify the company, asking to stay on the line, or press 1, then it asks me to enter the last 4 digits of my social, which they should not expect any intelligent person to do.[13]

---

[8] http://800notes.com/Phone.aspx/1-877-486-5003
[9] http://800notes.com/Phone.aspx/1-877-486-5003
[10] http://800notes.com/Phone.aspx/1-877-486-5003
[11] http://800notes.com/Phone.aspx/1-602-490-0134
[12] http://800notes.com/Phone.aspx/1-208-758-0232
[13] http://800notes.com/Phone.aspx/1-208-758-0232

21.    In making the phone calls at issue in this Complaint, Defendants and/or their agent(s) utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendants (or their agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

22.    In addition, Defendants continue to call the cellphones of consumers who inform Defendants to stop calling them both orally and through Defendants' automated system.

23.    Defendants acted jointly, pursuant to a contract and/or principal-agent relationship in making such autodialed and pre-recorded voice calls. The particulars of Defendants' relationship rests within the particular knowledge of Defendants and will be demonstrated through discovery.

24.    The TCPA is intended to give consumers control over how and where they receive calls. When Defendants incessantly autodial incorrect or independently discovered numbers, without consent, they take this control away from consumers and violate the TCPA.

25.    Defendants knowingly made (and continues to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call such consumers after requests to stop. As such, Defendant not only invaded the

personal privacy of Plaintiffs and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF ZADEL**

26.     Plaintiff Zadel began receiving calls on her cellular phone number starting around January of 2016.

27.     On several occasions, Plaintiff would answer the calls and hear a noticeable pause, a long silence, or a recorded voice telling her to "stay on the line." But when Plaintiff would wait for a live operator to pick up the call, no one would come onto the line, and she would finally hang up on those calls.

28.     On other occasions when she would answer their calls, she would hear only silence.

29.     Plaintiff Zadel estimates she received around three (3) calls per day during the month of January 2016, two of those numbers were 602-490-0134 and 602-635-1788. Defendants own/control such phone numbers.

30.     On February 2, 2016 Plaintiff Zadel called one of the numbers that was calling her 602-635-1788 and spoke to a live operator. The operator mentioned s/he was calling for Bernard Zadel, which is the name of Plaintiff Zadel's deceased father-in-law. Plaintiff Zadel informed them that she was Bernard Zadel's executor of his estate and asked what debt they may be calling about. The operator informed her that he could not give her any information. Plaintiff Zadel was puzzled since she estimates that they called her over 50 times (and perhaps more) in a span of several weeks yet

refused to reveal to her the matter the call was about. She promptly told the operator to stop calling her cellular phone number.

31.     Despite her verbal stop request, Plaintiff received another call on February 3, 2016 from Defendants from phone number 602-490-0134. When she answered the call, she immediately heard a pre-recorded message stating "we're trying to reach Bernard Zadel" and she was prompted to press a number on the touchpad of her cellular phone if she was or was not Bernard Zadel. She pressed a number as instructed that she was not Bernard Zadel. The pre-recorded message then asked if Bernard Zadel "could be reached at this number." Plaintiff indicated through the touchpad on her cellular phone that he could not be reached at that number.

32.     Despite these stop requests, Defendants called Plaintiff again on February 4, 2016 and then again on February 5, 2016 from 602-490-0134. And then again on February 10, 2016 from 602-635-1788.

33.     Plaintiff also received a call from Defendants on February 24, 2016.

34.     Plaintiff does not have a relationship with Defendants, has never provided her telephone number directly to Defendant, and has never permitted Defendants to make autodialed calls to her cellphone regarding debts of Bernard Zadel or for any other reason related to Bernard Zadel.

35.     On information and belief, Bernard Zadel did not have any account with American Express. It is unclear at this time what debt, if any, supposedly owed by Bernard Zadel was the subject of any call(s) placed to Plaintiff. In either case, Plaintiff expressly instructed Defendants not to call any further, yet Defendants continued to

call her.

36.     Defendants are and were aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

## CLASS ALLEGATIONS

37.     **Class Allegations**: Plaintiff Zadel bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of herself and three Classes defined below as follows:

> **Autodialed No Consent Class**: All persons in the United States who from March 17, 2012 to the present: (1) Defendants called; (2) on the person's cellular telephone number; (3) for whom Defendants claim they obtained prior express consent in the same manner as Defendants claim they obtained prior express consent to call the Plaintiffs; where (4) the calls did not relate to debt collection calls from or on behalf of American Express.

> **Pre-Recorded No Consent Class**: All persons in the United States who from March 17, 2012 to the present: (1) Defendants called using a pre-recorded message; (2) on the person's cellular telephone number; (3) for whom Defendants claim they obtained prior express consent in the same manner as Defendants claim they obtained prior express consent to call the Plaintiffs; where (4) the calls did not relate to debt collection calls from or on behalf of American Express.

> **Stop Call Class**: All persons in the United States who from March 17, 2012 to the present (1) informed Defendants to stop calling them either verbally or through their digital opt-out system, and (2) who subsequently received another autodialed or pre-recorded call to their cell phone from Defendants.

The following people are excluded from the Class:

> (1)  any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a

11

controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and, (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the need to amend the class definitions following discovery related to such issues.

38.   **Numerosity**: The exact sizes of each of the Classes are unknown and are not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendants' records.

39.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions are central to the case and predominate over any questions that Defendants may claim affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)   Whether Defendants' conduct violated the TCPA;

(b)   Whether Defendants systematically made telephone calls to individuals who did not previously provide Defendants and/or its agents with their prior express consent to receive such phone calls;

(c)   Whether Defendants made the calls with the use of an ATDS;

(d)   Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

(e)   Whether Defendants continued to make calls to consumers after

they requested that the calls stop.

40.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Classes.

41.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs.

42.    **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

43.    **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual

prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
**(On behalf of the Plaintiffs and the Autodialed No Consent Class and the Stop Call Class)**

44.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45.     Defendants made unsolicited and unwanted telemarketing calls to telephone numbers belonging to the Plaintiff and the other members of the Autodialed No Consent Class—without their prior express written consent—in an effort to place debt collection calls.

46.     Defendants failed to secure any prior express written or oral consent to call Plaintiff or the other Autodialed No Consent Class members.

47.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or

sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

48.    Defendants utilized equipment that made the telephone calls to the Plaintiff and other members of the Autodialed No Consent Class simultaneously and without human intervention.

49.    By making unsolicited telephone calls to Plaintiff and members of the Autodialed No Consent Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

50.    As a result of Defendants' unlawful conduct, Plaintiff and the members of the Autodialed No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and a reduction in their allotment of minutes and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

51.    Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiffs and the other members of the Class.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiffs and the Pre-Recorded No Consent Class and the Stop Call Class)**

52.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.    Defendants made unsolicited and unwanted telephone calls to cellular telephone numbers belonging to Plaintiff and the other members of the Pre-Recorded No Consent Class without their prior express consent.

54.    Defendants made unsolicited telephone calls to telephone numbers belonging to Plaintiff and the other members of the Pre-Recorded No Consent Class using a prerecorded or artificial voice, more commonly known as a "robocall."

55.    Defendants failed to secure any prior or express written or oral consent to call Plaintiff or the class members for any reason using an artificial or prerecorded voice.

56.    By making unsolicited robocalls using an artificial or prerecorded voice to Plaintiff and the Pre-Recorded No Consent Class' cellular telephones without prior express consent, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

57.    As a result of Defendant's unlawful conduct, Plaintiff and the other members of the Pre-Recorded No Consent Class suffered actual damages in the form of monies paid to receive unsolicited calls and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500 in statutory damages for each violating of the TCPA.

58.    Should the Court determine the Defendants' misconduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

59.    Further, as a result of Defendants' unlawful conduct, Plaintiff and the other members of the Pre-Recorded No Consent Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A), to ensure that Defendants' violations of the TCPA do not continue into the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Cynthia Zadel, individually and on behalf of the Classes, prays for the following relief:

1.    An order certifying the Classes as defined above, appointing Plaintiff Cynthia Zadel as the representative of the Classes and appointing her counsel as Class Counsel;

2.    An award of actual and statutory damages;

3.    A declaratory judgment that Defendants' telephone calling equipment constitutes an automated telephone dialing system under the TCPA;

4.    An injunction requiring Defendants and their agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Classes;

5.    An order requiring Defendants to pay restitution for any money or property lost or interfered with as a result of its unlawful telephone calling practices;

6.    An order requirement Defendants to permanently cease-and-desist from all unlawful conduct as alleged herein, and otherwise protecting the interests of the Classes;

7.    An award of reasonable attorneys' fees and costs; and

8.    Such other and further relief that the Court deems reasonable and just.

**TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b) <u>Plaintiff has demanded a trial by jury</u>.

Dated this 29th day of March, 2016.

Respectfully Submitted,

**CYNTHIA ZADEL**, individually and on behalf of all others similarly situated,

By: <u>/s/ *Steven J. German*</u>
     One of Plaintiff's Attorneys

**ADELMAN GERMAN, P.L.C.**
Steven J. German
Scott B. Seymann
8245 North 85th Way
Scottsdale, Arizona 85258

Steven Woodrow*
Woodrow & Peluso
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Phone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com

Stefan Coleman*
Law Offices of Stefan Coleman, LLC
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Phone: (877) 333-9427
Law@Stefancoleman.com

*Motion for admission *pro hac vice*
*Attorneys for Plaintiff*